**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(Western Division)**

| | |
|---|---|
| In Re ) | |
| ) | Chapter 7 |
| FansRule, Inc., ) | |
| ) | Case No: 03-46505-HJB |
| Debtor ) | |
| ) | |
| ) | |
| JOHN J. AQUINO, ) | Adversary Proceeding |
| CHAPTER 7 TRUSTEE, ) | Case No.: |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| J. NEIL DONAHUE, ) | |
| SANDRA L. MISSAKIAN, ) | |
| LEONARD LOBIONDO, ) | |
| PAUL MEDWAR, and ) | |
| GARY WILKINSON, ) | |
| ) | |
| Defendants ) | |

**COMPLAINT**

John J. Aquino, the duly appointed bankruptcy trustee (the "Trustee or "Plaintiff")

of the Chapter 7 estate of FansRule, Inc. (the "Debtor" or "Fansrule"), submits this

Complaint against J. Neil Donahue ("Donahue"), Sandra L. Missakian ("Missakian"),

Leonard LoBiondo ("LoBiondo"), Paul Medwar ("Medwar"), and Gary Wilkinson

("Wilkinson").

**Preliminary Statement**

1. In this adversary proceeding, the Trustee seeks to recover damages from

former officers and directors of the Debtor who participated in, or presided over, the operations of the Debtor in such a manner as to constitute a breach of their fiduciary duties to the Debtor and its creditors.

## Jurisdiction And Venue

2. Jurisdiction over this adversary proceeding is based upon 28 U.S.C. §§151, 157 and 1334.

3. This is a "core" proceeding as that term is defined in 28 U.S.C. §157(b)(2)(A), (E), (F), (H), and (O).

4. The District of Massachusetts is the proper venue for this adversary proceeding pursuant to 28 U.S.C. §1409.

## Parties

5. The Plaintiff, John J. Aquino, is the duly appointed and acting Chapter 7 trustee of the Debtor.

6. The Defendant Donahue is an individual who, upon information and belief and at times relevant hereto, was a major shareholder of the Debtor, as well as an officer and/or director of the Debtor. Donahue's usual place of business is Massachusetts. Donahue is an insider of the Debtor as that term is defined in 11 U.S.C §101(31)(B). Upon further information and belief, Donahue is an officer, director and shareholder of Marblehead Capital Group, Inc. ("Marblehead"), a Massachusetts corporation with a principal place of business located at 151 Warren Street, Lowell, Massachusetts.

7. The Defendant Missakian is an individual who, upon information and belief and at relevant times hereto, was a shareholder of the Debtor, a creditor of the Debtor by virtue of alleged loan transactions between Missakian and the Debtor, as well as an

2

officer of the Debtor, at times having served as president, secretary, and treasurer of the Debtor. Upon further information and belief, Missakian was also an employee of Marblehead during the time that she served as an officer of the Debtor. Missakian's usual place of business is Massachusetts. Missakian is an insider of the Debtor as that term is defined in 11 U.S.C §101(31)(B).

8. The Defendant LoBiondo is an individual who, upon information and belief and at times relevant hereto, was a director of the Debtor. Upon further information and belief, LoBiondo was also a principal of CFL Holdings, LLC while serving as a director of the Debtor. LoBiondo is an insider of the Debtor as that term is defined in 11 U.S.C §101(31)(B).

9. The Defendant Medwar is an individual who, upon information and belief and at times relevant hereto, was and officer and/or director of the Debtor, and served as the Debtor's chief financial officer. Upon further information and belief, Medwar was also an employee of Marblehead while serving as an officer of the Debtor. Medwar is an insider of the Debtor as that term is defined in 11 U.S.C §101(31)(B).

10. The Defendant Wilkinson is an individual who, upon information and belief and at times relevant hereto, was an officer of the Debtor. Wilkinson served as chief financial officer of the Debtor commencing in or about September, 2003, and served as chief operating officer as of the date of the filing of the Debtor's Chapter 11 petition. Wilkinson is an insider of the Debtor as that term is defined in 11 U.S.C §101(31)(B).

**Background And General Allegations Of Fact**

11. The Debtor is a corporation organized under the laws of Delaware in 1999 under the name FansRULE.com, Inc. The Debtor's name was subsequently changed to

FansRULE, Inc. Upon information and belief, at its inception, Donahue was the sole shareholder and director of the Debtor, served as Chairman of the Debtor's Board of Directors, and Missakian served as president, secretary, and treasurer of the Debtor. Since its organization, the Debtor has been engaged in the business of management of recording artists' fan clubs, pursuant to which it maintained various fan club websites, engaged in the sale of fan merchandise, and provided "fan experiences" consisting primarily of concert tickets and admission to concert-related events.

12. Upon information and belief, in addition to the business operations of the Debtor, Donahue was also engaged in various other business enterprises. Upon information and belief, one such enterprise, Marblehead, was engaged in the business of provision of financial investment services, pursuant to which Marblehead's customers would entrust money to Marblehead for the purpose of having such funds invested by Marblehead. Upon information and belief, during the period relevant hereto, Donahue controlled the operations of Marblehead, and was the individual primarily responsible for the investment of customer funds.

13. Upon information and belief, Donahue, as the then sole director of the Debtor, caused the Debtor to enter into a so-called "Chairman's Agreement" as of January 1, 2000, pursuant to which Donahue was to serve as chairman of the Debtor's board of directors, and "shall be in active charge, control and supervision over the management and direction of the business, property and affairs of the [Debtor]." Additionally, pursuant to said Chairman's Agreement, Donahue was provided an annual salary of $120,000. The stated term of the Chairman's Agreement was four years.

14. Upon information and belief, Donahue, as the then sole director of the

4

Debtor, caused the Debtor to enter into a certain "Management Agreement" with Marblehead as of January 1, 2001, pursuant to which Marblehead would purportedly provide "executive and administrative services" in consideration of a monthly management fee of $35,000.

15. Upon information and belief, although the Debtor operated for several years and recognized increasing gross income over the duration of its business operations, at no time did the Debtor operate profitably on an annual fiscal basis. Upon information and belief, as of the Petition Date, the Debtor had suffered net operating losses in excess of $7,000,000. Upon further information and belief, at all times prior to the filing of the Debtor's Chapter 11 bankruptcy petition, Donahue was a director of the Debtor, and, effectively served as chief executive officer of the Debtor.

16. On November 12, 2003 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On July 1, 2004, the Debtor's Chapter 11 proceeding was converted to a case under Chapter 7 of the Bankruptcy Code, and the Trustee was thereafter appointed on July 7, 2004.

17. Upon information and belief, during the later part of 2002 and 2003, certain customers of Marblehead, including CFL Holdings, LLC and William R. Woodward, demanded Marblehead to liquidate certain brokerage accounts and investments allegedly maintained on their behalf by Marblehead and to remit the proceeds. Upon further information and belief, Marblehead failed to remit the funds to the respective Marblehead customers as demanded, and Donahue proffered numerous excuses over an extended period of time for his inability to remit the funds.

18. On or about April 11, 2003, CFL Holdings, LLC, on behalf of itself and

5

CDFL Capital, LLC (collectively, "CFL"), instituted a lawsuit in the United States District Court for the District of New Jersey, Case No: 03-1578 (WJM/RJH) against Marblehead, Donahue, Missakian and others (collectively, the "New Jersey Defendants") pursuant to which CFL alleged that the New Jersey Defendants had misappropriated more than $12,000,000 of CFL's funds which had been entrusted to Marblehead for investment purposes. On April 16, 2003, the New Jersey District Court entered an preliminary injunction against Donahue, Marblehead and other related entities enjoining the transfer, pledge, encumbrance, conveyance, sale or hypothecation of any funds, securities, property, or assets of any type or nature owned or controlled, directly or indirectly, by Marblehead or Donahue.

19. Additionally, upon information and belief, William R. Woodward ("Woodward") thereafter intervened in the aforesaid New Jersey litigation and asserted that Donahue and Marblehead misappropriated approximately $4,000,000 of funds belonging to Woodward.

20. On May 6, 2003, the New Jersey District Court entered a consent order which enlarged the scope of the injunctive relief granted initially on April 16, 2003. Upon information and belief, the consent order was negotiated by CFL, Marblehead and Donahue in partial consideration for allowing Marblehead and the Debtor to operate its businesses and pay ordinary and necessary operating expenses relating to the respective business enterprises. The May 6, 2003 consent order continued the prohibitions contained in the April 16, 2003 order, but further provided that the injunction would not restrain or enjoin the payment of ordinary and necessary operating expenses by Marblehead and the Debtor contingent upon the compliance by Marblehead and the

Debtor with certain specific requirements. Among the requirements contained in the May 6, 2003 consent order were the provision of monthly income and disbursements reports to CFL by Marblehead and the Debtor, the production by Marblehead of certain requested documents, and the requirement that no transactions out of the ordinary course of business were made or entered into by either Marblehead or the Debtor.

21. Upon information and belief, through the Winter of 2002 and into the Spring of 2003, Donahue faced encountered increasing pressure from CFL, Woodward, and others to produce the funds entrusted to Marblehead for investment. Faced with the inability to return or replace funds as demanded, and further facing restraints upon the use of available funds as the result of the various New Jersey District Court orders, Donahue embarked upon a systematic misappropriation of the Debtor's funds for improper purposes wholly unrelated to the Debtor's business operations.

**The Woodward Transfers**

22. Upon information and belief, on May 6, 2003, the very day of the entry of the consent order in the New Jersey litigation, Donahue caused the Debtor to transfer the amount of $1,325,000 of the Debtor's funds to Woodward (the "First Woodward Transfer"). At the time of the aforesaid transfer, the Debtor owed no obligation to Woodward, and no consideration existed for the transfer of the funds.

23. Upon information and belief, CFL received the Debtor's report of receipts and disbursements on or about June 13, 2003, and discovered the existence of the First Woodward Transfer. Upon further information and belief, pursuant to a motion to show cause filed on behalf of CFL, on August 8, 2003, the New Jersey District Court entered a further order finding that Donahue had violated existing orders of the Court, and

7

extending the injunction and restraints against transfers to Marblehead and the Debtor. The Court further ordered the repayment to the Debtor of the sum of $1,325,000 by Donahue and Woodward by no later than 1:00 p.m. on August 15, 2003.

24. In a letter addressed to the New Jersey District Court dated November 4, 2003, from Gary Wilkinson, then the interim chief financial officer of the Debtor, a further violation of applicable injunctions and restraining orders was revealed. The November 4 letter states as follows:

> This is a disclosure made on behalf of FansRule. I am the Interim Chief Financial Officer of defendant FansRule, Inc. ("FansRule"), and I have held that position since my hiring on September 8, 2003. Mr. Donahue informed me sometime during my first two weeks that FansRule had sent $858,700 on June 19, 2003 to William R. Woodward (Plaintiff-Intervenor). Upon checking the books and records of FansRule, such payment had in fact been made, but had been recorded as a payment to Clear Channel for Aerosmith tickets on the books. This entry has since been corrected. The $858,700 payment had been made by cashiers check and was one of three cahiers checks drawn on that day.

Hence, upon information and belief, in clear violation of existing court orders, on or about June 19, 2003, Donahue caused the Debtor to transfer the amount of $858,700 of the Debtor's funds to Woodward (the "Second Woodward Transfer"). At the time of the Second Woodward Transfer, the Debtor owed no obligation to Woodward, and no consideration existed for the transfer of the funds. Additionally, on or about April 11, 2003, Donahue caused the sum of $202,000 of the Debtor's funds to be transferred to Woodward, again, without the existence of any obligation of the Debtor to Woodward and with no consideration for the transfer of the funds. Thus, Donahue orchestrated the misappropriation of $2,385,7000 of the Debtor's funds for purposes wholly unrelated to the Debtor's business operations. The improper withdrawal of the aforesaid funds of the Debtor inextricably lead to the ultimate collapse of the Debtor's business operations by

8

creating an operating burden which the Debtor could not bear.

### The Donahue Transfers

25. The Debtor's books and records reflect transfers of the Debtor's funds, made to, or for the benefit of, Donahue personally, during the period March, 2003 through May 6, 2003, in the approximate aggregate sum of $147,152. The aforesaid transfers constituted blatant misappropriation of the Debtor's assets for improper purposes wholly unrelated to the operation of the Debtor's business. The transfers appear to be in payment of personal expenses, including personal automobile expenses, home mortgage payments, personal credit card invoices, legal fees, and various other non-business expenses.

26. In addition to the use of the Debtor's funds for Donahue's direct personal purposes as set forth above, the Debtor's records also reflects a payment to Boss Productions in the amount of $50,000, in further violation of the New Jersey District Court Orders. Upon information and belief, Boss Productions is an entity owned and/or controlled by a Donahue family member, Francis Donahue.

### The PKA Entertainment LLC Transfers

27. Upon information and belief, prior to March, 2003, the Debtor was a party to a consulting agreement with PKA Management, Inc. ("PKA Management"), pursuant to which the Debtor paid PKA Management a $7,500 monthly consulting fee in consideration for the management of the Debtor's relationship with the rock band Aerosmith. In or about March, 2003, the Debtor's contract with PKA Management was replaced with a contract with PKA Entertainment LLC ("PKA Entertainment"). Payments from the Debtor to PKA Entertainment during the period March 2003 through

9

October 2003 aggregate $176,194 - far in excess of the former $7,500 per month consulting fee. Indeed, payments from the Debtor to PKA Entertainment continued after the filing of the Debtor's Chapter 11 proceeding, and Donahue strenuously lobbied the former Chapter 11 trustee for the filing of a motion seeking the authorization for the payment of more than $65,000 in pre-petition obligations to PKA Entertainment as being "critical" to the on-going business operations of the Debtor.

  28. The Trustee has investigated the circumstances surrounding the substitution of PKA Entertainment for PKA Management, and has learned that PKA Entertainment was a then newly-formed entity in which Donahue holds a fifty percent beneficial interest. Upon information and belief, Donahue was not a holder of any equity interest in PKA Management prior to the entry into the new contract in February or March, 2003. Further, upon information and belief, Donahue failed to disclose his equity interest in PKA Entertainment at the time of the entry into the agreement with PKA Entertainment, or at any time thereafter. Upon information and belief, at the time of the allowance of the so-called "critical vendor" or "necessity" motion which authorized the payment of prepetition obligations allegedly owned to PKA Entertainment, neither the Court, the Chapter 11 trustee, nor any other estate functionary was aware of the undisclosed Donahue ownership interest.

  29. Hence, by virtue of the undisclosed interest in PKA Entertainment, Donahue engaged in further self-dealing contrary to the interests of the Debtor, and created a mechanism by which he could siphon additional funds from the Debtor to the detriment of the Debtor and its creditors.

  30. Upon information and belief, on or about April 28, 2003, the Debtor

transferred the sum of $55,000 to Missakian purportedly on account of repayment of a loan made by Missakian to the Debtor.

**Count One**

31. The Trustee repeats and realleges Paragraphs 1 through 30, inclusive, and by reference incorporates them herein and make them a part of this claim.

32. At all times relevant to this Complaint, the Debtor was insolvent, as it was unable to pay its debts as they came due and because, fairly valued, the Debtor's liabilities exceeded its assets.

33. Upon the Debtor's insolvency, each of the Defendants owed a fiduciary duty to the Debtor's creditors.

34. At all times relevant hereto, the Defendant directors and officers were not disinterested. Defendant Donahue was the principal shareholder and chief operating officer of Marblehead, and engaged in conduct designed to benefit himself personally and his other business enterprises to the detriment of the Debtor and to the detriment of the Debtor's creditors. Defendants Missakian and Medwar were employees of Marblehead while serving as officers of the Debtor, Defendant LoBiondo was a principal in an entity which claimed to be owed a sum of no less than $12,000,000 from Marblehead and which sought to impair the Debtor's business operations in a collection effort pursuant to the New Jersey District Court litigation.

35. The Defendant directors and officers permitted Donahue to siphon large amounts of money from the Debtor at a time when the Debtor was insolvent.

36. The Defendant officers and directors failed to institute appropriate safeguards to protect the interests of the Debtor and of the Debtor's creditors. Rather, each engaged

in, or encouraged conduct which breached their duties of care, loyalty, independence and good faith.

37. By reason of the foregoing, the debtor's estate has been damaged in an amount to be determined at trial.

WHEREFORE, the Trustee respectfully prays that the Court:

1. Enter a money judgment awarding the Debtor's estate damages against Defendants Donahue, Missakian, LoBiondo, Medwar, and Wilkinson as a result of the foregoing Defendants' breach of their fiduciary obligations as officers and directors of the Debtor to the Debtor and the Debtor's creditors; and

2. Grant such other and further relief as may be just and proper.

JOHN J. AQUINO,
CHAPTER 7 TRUSTEE

By his counsel,

/s/ Donald F. Farrell, Jr.
Donald F. Farrell, Jr. (BBO 159580)
ANDERSON AQUINO LLP
260 Franklin Street
Boston, MA 02110
617-439-3500

December 23, 2004.